IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| MARSHALL SPIEGEL, individually and on behalf of a class of those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-cv-8504 |
| v. | ) ) | Hon. Edmond E. Chang |
| JAMES T. REYNOLDS; JIM REYNOLDS; KRISTINA HIXON ASSOCIATED COMMUNITY SERVICES, INC. | ) ) ) ) | Magistrate Jeffery T. Gilbert |
| Defendants. | ) | |

## AMENDED CLASS ACTION COMPLAINT

1. Plaintiff, Marshall Spiegel ("Plaintiff"), brings this class-action complaint against Defendants in order to obtain redress for all persons who have received unsolicited robocalls in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) on behalf of a sham charity known as The Breast Cancer Society, Inc. Plaintiff alleges as follows based upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys. URLs in connection with some of counsel's Internet investigation are referenced in this complaint; in such instances, facts referenced in text associated with the URL are incorporated into this complaint.

## PARTIES

2. Plaintiff, MARSHALL SPIEGEL, (hereafter, "Plaintiff" or "Spiegel"), is a natural person, and a citizen of the State of Illinois.

3. Defendant JAMES T. REYNOLDS, II, along with his wife, KRISTINA HIXON, and his father JIM REYNOLDS, SR., (collectively "the REYNOLDS

FAMILY") have been involved in running a purported charity called the Breast Cancer Society, Inc. The Breast Cancer Society was a mere alter-ego of the Reynolds family, they used corporate assets for personal benefits, kept the organization under-capitalized, and disregarded corporate formalities. Each of the Reynolds' is responsible for all actions of the Breast Cancer Society, including actions taken in Illinois. The Reynolds', through telemarketing efforts by ACS availed themselves of benefits in Illinois, including deceptive solicitations to Illinois residents falsely claiming money was going to a charity, when in fact it was not. They profited and benefitted from deception directed into Illinois.

4.  The Breast Cancer Society, Inc. (hereafter, "BCS") is a sham charity, and is not a legitimate tax-exempt non-profit organization. See, http://cironline.org/reports/part-3-how-one-family-turned-your-goodwill-their-livelihood-4605; http://www.nytimes.com/2015/05/20/business/4-cancer-charities-accused-in-ftc-fraud-case.html?_r=0; http://www.yelp.com/biz/the-breast-cancer-society-mesa; https://www.ftc.gov/news-events/press-releases/2015/05/ftc-all-50-states-dc-charge-four-cancer-charities-bilking-over; http://nonprofitquarterly.org/2013/06/14/the-reynolds-family-s-wretched-charity-empire/; and http://www.breastcancersociety.org.

5.  Defendant, ASSOCIATED COMMUNITY SERVICES, INC., is a telemarketing company based in Southfield Michigan. *See*, http://www.associatedcommunityservices.com/ContactUs.

6.  Defendant ASSOCIATED COMMUNITY SERVICES, INC. (hereafter, "ACS") was recently fined by the Attorney General of the State of Michigan for over 430 violations of laws governing charity solicitation, violating the Charitable Organizations and Solicitations Act, and deceiving elderly people. *See*,

2

http://archive.freep.com/article/20140227/BUSINESS06/302270199/acs-charity-schuette-settlement and http://www.michigan.gov/ag/0,4534,7-164-46849_47203-304375--,00.html.

7. At times relevant to this complaint, ASSOCIATED COMMUNITY SERVICES, INC., has made telemarketing calls on behalf of the REYNOLDS FAMILY and/or one of their sham charities, TBCS. *See*, http://www.livingstondaily.com/story/news/local/michigan/2015/05/24/feds-accuse-cancer-groups-major-fraud-case/27904457/.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it is a civil action arising under the federal laws of the United States, namely 47 U.S.C. §227, the Telephone Consumer Protection Act.

9. This Court has personal jurisdiction over the Reynolds family, and each of them, because the corporate form the BCS should be disregarded as a sham, and because they benefited from a telemarketing scheme directed at Illinois with their knowledge and consent. This scheme sought to deceive consumers into thinking they were donating money to a charity, when in truth BCS was a sham charity. Donations sought from Illinois residents actually benefitted the Reynolds family and ACS, not breast cancer survivors. By profiting from tortious acts committed within the State they have submitted to personal jurisdiction here.

10. Venue is proper in this District under 28 U.S.C. § 1391 (b)(2) because Plaintiff resides in this District, and a substantial part of the acts of omissions that give rise to this claim occurred in this district.

**FACTS PARTICULAR TO PLAINTIFF**

11.     Plaintiff is on the national "do not call" list.

12.     Plaintiff has been on the do not call list since at least July 2003, and registered both his cell phone number and home number on this list.

13.     During the four years before the filing of this action, Plaintiff received numerous calls to his phone from ACS, these calls include but are not necessarily limited to the following:

(a)     On October 27, 2013, plaintiff received a telemarketing call on his home telephone from 309-623-4977 made on behalf of, and for the benefit of the REYNOLDS FAMILY and the Defendant Telemarketer making the call, with a called ID that displayed as follows: "BREAST CANCER S."

(b)     On April 11, 2014, plaintiff received a telemarketing call on his home telephone from 309-623-4977 made on behalf of, and for the benefit of the REYNOLDS FAMILY and the Defendant Telemarketer making the call, with a called ID that displayed as follows: "BREAST CANCER S."

(c)     Plaintiff also received a telephone call to his cell phone number in April 2014 from 309-623-4977 made on behalf of, and for the benefit of the REYNOLDS FAMILY and the Defendant Telemarketer making the call, with a called ID that displayed as follows: "BREAST CANCER S."

(d)     On May 29, 2014, plaintiff received a telemarketing call on his home telephone from 309-623- made on behalf of, and for the benefit of the REYNOLDS FAMILY and the Defendant Telemarketer making the call, with a called ID that displayed as follows: "BREAST CANCER S."

(e) August 22, 2014, plaintiff received a telemarketing call on his home telephone from 309-623-4977 made on behalf of, and for the benefit of the REYNOLDS FAMILY and the Defendant Telemarketer making the call, with a called ID that displayed as follows: "BREAST CANCER S."

(f) Plaintiff also received a telephone call to his cell phone number in January 2015 from 309-623-4977 made on behalf of, and for the benefit of the REYNOLDS FAMILY and the Defendant Telemarketer making the call, with a called ID that displayed as follows: "BREAST CANCER S."

14. The calls placed to Plaintiff's cell phone were made using an automatic dialer, using the capacity definition. This allegation is based on the volume of calls believed to me bade, facts reported on the internet sites such as "800-Notes," and reports of former employees on sites like Indeed.com.

## CLASS ALLEGATIONS

15. Plaintiff brings this action as a class action on behalf of the following classes of individuals, subject to the exclusions set forth in paragraph 16:

(a) Class A consists of: (1) all persons; (2) whose phone numbers are listed on the national do-not-call list; (3) who have received, during the four years prior to the filing of this action, more than one phone call; (4) with 'BREAST CANCER S" in the caller ID field.

(b) Class B consists of: (1) all persons; (2) whose phone numbers are listed on the national do-not-call list; (3) who have received, during the four years prior to the filing of this action, more than one phone call; (4) by or on behalf of the subscribers to telephone number 309-623-4977.

5

17. Excluded from the definitions of the Classes are: (a) Defendants and officers, agents and employees of the Defendants, (b) the judicial officers assigned to preside over this case, and (c) Plaintiff's counsel.

18. *Numerosity*: Members of the proposed class are so numerous that their individual joinder is impracticable. The precise number of members is unknown to Plaintiff at this time, but based upon reasonable estimates the class includes thousands of individuals. The true number of proposed class members is, however, likely to be known by Defendants, and thus, class members may be notified of the pendency of this action

19. *Commonality*: There are numerous questions of law and fact common to Plaintiff and the proposed class; those questions predominate over any questions that may affect individual Class members, and include the following:

   (a) Whether Defendants violated the TCPA by causing call to be made to individuals on the national do-not-call list;

   (b) Whether Defendants' sham charities qualify as tax exempt, nonprofit organizations under the TCPA; and

   (c) Whether members of the REYNOLDS FAMILY should be held personally liable for their sham charity calls.

20. *Typicality*: Plaintiff's claim is typical of the other members of the proposed classes. Plaintiff received the same telemarketing calls as other members of the proposed classes, and seeks the same statutory remedies to which each proposed class member would be entitled.

21. *Adequacy*: The named Plaintiff will adequately represent the interests of the proposed class. He has been treated in the same manner as other proposed class members. Plaintiff is committed to vigorously prosecuting this action and Plaintiff has retained attorneys with consumer law, TCPA, and class action experience who are well

qualified to handle lawsuits of this type. Plaintiff has no interests that are adverse to those of the proposed class.

22. *Predominance*: This case should be certified as a class action because the common questions of law and fact concerning the telemarketing activities associated with Defendants' sham charities predominate over any other issues.

23. *Superiority*: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the proposed class. The expense and burden of individual litigation makes it impracticable for members of the proposed class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice

## COUNT I
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

24. Plaintiff re-alleges and incorporates by reference Paragraphs 1-23 of this Amended Complaint.

25. A private right of action for "do not call" violations is conferred upon any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed by the FCC. 47 U.S.C. §227(c)(5) provides:

> *(5) Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State--*
> *(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,*
> *(B) an action to recover for actual monetary loss from such a violation, or to*

*receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions.*
*It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.*

26. A private right of action exists for telemarketing robocalls to a residence, under 47 U.S.C. 227(b)(3), which provides:

*Private right of action.*
*A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –*
*(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,*
*(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or*
*(C) both such actions.*
*If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.*

27. Plaintiff and members of the proposed class each received more than one phone call to their do-not-call registered residential lines, either from the relevant numbers, or identified by the relevant caller-ID language.

28. These calls sought donations and/or the purchase of goods or services, and therefore constituted telephone solicitations.

29. ACS made these calls.

30. The calls are not exempt from TCPA coverage because they were not made by or on behalf of a tax exempt, non-profit organization. This is because:

8

(a) BCS was not a legitimate tax-exempt non-profit organization, but rather a sham charity run by the REYNOLDS family.

(b) Less than 10 % of the money was remitted to BCS.

(c) The calls were made on behalf of ACS, for its own benefit, and ACS is a for-profit entity that is not tax-exempt. The claim that calls were made to benefit BCS were mere pretext in an effort to shield ACS' profit-making calls from the requirements of the TCPA.

(d) The principals of ACS have denied by affidavit that they directed or controlled the calls.

(e) The evidence to be adduced (including the scripts, contracts, and payment records) will show that that calls were not, in fact, made on behalf of BCS but were made primarily for the benefit of ACS.

31. BCS is not a tax-exempt organization because it did not serve a public purpose and acted contrary to public policy. See, e.g., Bob Jones University v. United States, 461 U.S. 574, 586 (1983)("entitlement to tax exemption depends on meeting certain common law standards of charity – namely…a public purpose and not contrary to established public policy").

32. BCS engaged in illegal conduct, and violated established policy. Because its conduct was not consistent with local laws and public policy it is not entitled to tax exemption as a public charity. *Perin v. Carey*, 24 How. 465, 501 (1961).

33. For example, Breast Cancer Society, told the IRS it shipped $36 million worth of medical supplies overseas in 2011. But the two companies named as suppliers of the donated goods said they have no record of dealing with the group.

http://cironline.org/reports/part-3-how-one-family-turned-your-goodwill-their-livelihood-4605.

34. BCS received less than 10-15% of the money collected by ACS, and then that money went mostly to the Reynolds family, who collected 13 times more in salaries – over $8,000,000 – than were purportedly donated to any cancer patients.

35. Money supposedly raised by ACS benefited not cancer patients, but the Reynolds family directly, including being spent on carwashes and college tuition. http://www.nytimes.com/2015/05/20/business/4-cancer-charities-accused-in-ftc-fraud-case.html?_r=2.

36. Jessica Rich, Director of the FTC's Bureau of Consumer Protection, stated with respect to the conduct of the Reynolds family: "The defendants took in millions of dollars in donations meant to help cancer patients, but spent it on themselves and their fundraisers." https://www.ftc.gov/news-events/press-releases/2015/05/ftc-all-50-states-dc-charge-four-cancer-charities-bilking-over

37. As the FTC reported: The proposed final orders against BCS and Reynolds II impose a $65,564,360 judgment, the amount consumers donated between 2008 and 2012. The BCS order provides an option, subject to court approval, for spinning off its Hope Supply Warehouses program to a legitimate, qualified charity. BCS's remaining assets will be liquidated and used to partially satisfy the judgment. The judgment against Reynolds II will be suspended when he pays $75,000. … The full judgment amounts against the individuals will become due immediately if they are found to have misrepresented their financial condition. *See*,

https://www.ftc.gov/system/files/documents/cases/150519cancerfundpropbcsstip.pdf

38. Plaintiff and proposed class members are entitled to statutory damages for each call placed by ACS purportedly for the benefit of BCS, but actually on behalf of, and for the benefit of, ACS and the Reynolds family.

39. At all relevant times ACS was aware, when making the calls in question, that BCS was a sham charities.

40. ACS was aware, when making the calls in question, that many of the numbers being called were registered on the national do-not-call list.

41. Therefore, ACS' calling of individuals on the national do-not-call registry was willful.

42. ACS violated the TCPA even if their actions were only negligent.

43. ACS should be enjoined from committing similar violations in the future.

44. The Reynolds family is jointly and severally liable for the conduct of ACS in making the calls because they benefited from and shared in the profits generated from the calls and conspired with ACS to deceive consumers into thinking the BCS was a legitimate tax-exempt organization, when it was not.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants, jointly and severally, for:

(a) An Order certifying the proposed classes, appointing Plaintiff as class representative, and appointing Plaintiff's attorneys as class counsel;

(b) An Order stating the BCS is a mere alter ego of the Defendant Reynolds Family and that any corporate veil should be pierced and disregarded.

(c) Actual damages;

  (d)  Statutory damages;

  (e)  An injunction against further violations;

  (f)  Costs of suit;

  (g)  Such other or further relief as the Court deems just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY

            Respectfully Submitted,
            s/ Christopher V. Langone
            Christopher V. Langone
            *Attorney for Plaintiff*
            150 North Michigan Street, STE 800
            Chicago, IL 60601
            langonelaw@gmail.com
            (607) 592-2661

            James P. Batson
            Law Offices of James P. Batson
            8 Bedford Rd.
            Katonah, NY 10536
            (914) 523-2278